UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

SUBECA, INC.,

    Plaintiff,

    v.

MATTHEW FRONCILLO and
PROTOBEE, INC.,

    Defendants.

C.A. No. _____

## COMPLAINT

Plaintiff Subeca, Inc. ("Subeca" or the "Company"), by and through its undersigned counsel, as and for its Complaint against Defendants Matthew Froncillo ("Froncillo") and Protobee, Inc. ("Protobee"), respectfully states and alleges as follows:

## NATURE OF THE ACTION

1. This is an action for declaratory judgment necessitated by Defendants' wrongful assertion of purported rights with respect to Subeca's intellectual property. As set forth in detail below, Defendants do not have any cognizable interest as a matter of law in Subeca's intellectual property. Because an actual controversy exists between the parties relating to Subeca's intellectual property – a controversy that is interfering with Subeca's business – Subeca seeks an order from this Court declaring that Subeca has the sole and exclusive rights in the intellectual property owned by the Company. Further, because Froncillo mislead Subeca with respect to the issues set forth below and surreptitiously sought to identify certain property as belonging to his company Protobee while serving as Subeca's Director of Engineering, Subeca seeks an order declaring that certain stock options Froncillo seeks to exercise have been forfeited.

1

**PARTIES**

2.      Plaintiff Subeca, Inc. is a Delaware company with a principal place of business in Richardson, Texas.

3.      Defendant Matthew Froncillo is an individual who, on information and belief, resides in Charleston, South Carolina and, at times relevant to this action, resided in Medford, Massachusetts.

4.      Defendant Protobee, LLC is a California limited liability company with a principal place of business in Encinitas, California. On information and belief, Froncillo owns and controls Protobee, serves as Protobee's chief executive officer, and operated Protobee from Medford, Massachusetts while residing and working there.

**JURISDICTION**

5.      This Court has personal jurisdiction over the defendants pursuant to G.L. c. 223A, §3 because they transacted business in the Commonwealth and entered into contracts in the Commonwealth.

6.      This Court has subject matter jurisdiction over this matter under 28 U.S.C. §1338 because Subeca seeks a declaration of its rights under the Copyright Act, 17 U.S.C. § 101, and under 28 U.S.C. §1332 because the parties are diverse while the amount in controversy exceeds $75,000.

7.      Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(2) and (3).

**FACTUAL BACKGROUND**

*Subeca and Its Intellectual Property*

8.      Founded in 2015 and originally known as Seco Sys, LLC ("Seco"), Subeca is dedicated to building simple technological solutions to meet challenges regarding the management

2

of water resources. The Company's products are focused on wireless water systems, connecting with meters to deliver seamless, smart functionality to customers. Subeca's devices are battery powered and easy to install, providing verifiable data regarding water usage to the Company's customers.

9.      On May 1, 2014, Seco filed a United States provisional patent application entitled "System and Method for Monitoring And Control for Fluid Management," naming Henry J. McCarrick and James R. Manley, Jr. as inventors (the "Provisional Patent Application").

10.     On April 29, 2015, Seco filed a United States non-provisional patent application claiming priority to the Provisional Patent Application also entitled System and Method for Monitoring And Control for Fluid Management," naming Henry J. McCarrick and James R. Manley, Jr. as inventors along with Kevin E. Burrow ("the Patent Application").

11.     On April 29, 2015, the inventors assigned their rights in the Patent Application to Seco.

12.     On August 7, 2018, the Patent Application issued as U.S. Patent No. 10,042,367 ("the Patent").

13.     The Patent was directed to the Seco HydraLink product that detected high or continuous flow from water meter readings and, when this condition was detected, turned off a valve preventing water from flowing into the home causing damage.

14.     On March 21, 2024, Seco assigned the Patent to Subeca.

### *Protobee*

15.     On information and belief, Froncillo founded Protobee in 2013 as a consulting business providing services related to microcontroller peripheral firmware, wireless protocol methods, and other products.

3

16.     Froncillo has, on information and belief, operated Protobee from numerous locations, including Massachusetts when he first contracted with Seco.

### *Froncillo's Employment with Seco, and Subsequently with Subeca*

17.     In or around early 2017, years after the filing of the Provisional Patent Application and Patent Application, Seco began discussions with Froncillo with respect to potential design services regarding the Company's HydroLink product. By this time, Seco had developed a working prototype of the Hyrdolink product that incorporated technology described in the Patent Application and later issued Patent.

18.     On or about February 19, 2017, Seco entered into a Statement of Work with Froncillo (through his company Protobee) for design services relating to the HydroLink/Act Valve controller board. Pursuant to the terms of the Statement of Work, Protobee was tasked with providing the following services: (i) system architecture design assistance; (ii) parts selection and optimization, including source processor, power supply peripheral ICs and the creation of a bill of materials; (iii) PCB design, including schematic and PCB layout; (iv) PCB prototyping and part placement and (iv) firmware for an initial prototype.

19.     As a subcontractor, Protobee contributed general firmware components for the prototype and offered routine design input and assistance with part selection. Protobee's contributions were not novel, unique, proprietary, or subject to trade secret protection. Nor did Protobee provide Seco with a non-disclosure or confidentiality agreement.

20.     Based on information and belief, Protobee did not incorporate any of its patented material into the prototype.

21.     On April 14, 2018, Seco provided a written offer to Froncillo for full-time employment as the company's Director of Engineering. *See* Ex. A, Froncillo's Employment Offer

Letter ("Offer Letter"). The Offer Letter anticipated that Froncillo might not assume his full-time

duties immediately, with the expectation that he would begin by no later than January 1, 2019.

22.     The Offer Letter further anticipated that Froncillo would be provided with an option

to purchase a three percent membership interest in the Company. *Id.*

23.     Froncillo was living in Medford, Massachusetts at the time he was provided with

the Offer Letter and, on information and belief, performed services for Seco on behalf of Protobee

while in Medford, Massachusetts.

***As an Employee and Option Holder, Froncillo Acknowledged that the Company Retained all
Ownership, Rights, Title, and Interest in the Information and Designs Related to its Products.***

24.     Consistent with the Offer Letter, Froncillo executed a Membership Option

Agreement with Seco on or about October 3, 2018. *See* Ex. B, the Membership Option Agreement

("Membership Agreement"). The Membership Agreement granted Froncillo the option to purchase

a three percent membership interest in Seco, conditioned on his acceptance of full-time employment

with the Company and "best efforts during such employment." *Id.*

25.     Froncillo confirmed, in writing, under the Membership Agreement that Seco owned

and controlled all of the Company's intellectual property, which would have included any such

property provided to Seco by Froncillo or Protobee. In particular, Section 4.4 provided as follows:

> As a condition of and in partial consideration of the granting of the option, Optionee
> acknowledges and agrees that all technology, technical data, proprietary software
> (including source and object codes), plans, drawings and blueprints, product
> development, techniques, formulations, methods of manufacture, designs and
> design products, research and development data, inventions, patents, trademarks,
> copyrights, licenses … and all know how and information (tangible and intangible)
> relating to the business, products and services of the Company or any of its
> Affiliates, **belong solely to the Company or its Affiliates or licensors** and are the
> valuable trade secrets, and/or confidential and proprietary information of the
> Company or its Affiliates or licenses, as the case may be….

*See* Ex. B, the Membership Agreement (emphasis added).

26.    On or about January 1, 2019, Froncillo became a full-time employee of Seco, serving as Director of Engineering. In that role, Froncillo was responsible for the following: (i) managing the development of Seco's hardware products; (ii) working with Seco's chief technology officer to develop new technology roadmaps for future products; (iii) recruiting new members of the engineering team as required to support the Company's growth; (iv) coordinating development activities with all contract engineering resources; (v) optimizing products for cost and performance; and (vi) coordinating all product transfers to manufacturing.

27.    On or about March 1, 2019, Seco merged with Subeca and retained a new executive team. Froncillo remained the Director of Engineering.

28.    On or about January 13, 2021, Froncillo exercised his option pursuant to the Membership Agreement, obtaining 3,030 shares of Common Stock in the Company.

***Froncillo's On-going Role as Director of Engineering and Recognition that Seco Owned and Controlled all of the Company's Intellectual Property***

29.    As Subeca's Director of Engineering, Froncillo participated in the Company's efforts to raise investment funds and prepared materials and attended meetings with prospective investors in support of Subeca's fundraising efforts, including a multi-day meeting with Series A investors at Subeca's manufacturing facility in Richardson, TX in January 2024. Those efforts included detailed discussions of – and due diligence concerning – the Company's intellectual property. Froncillo participated in those discussions and confirmed that the intellectual property related to Subeca's products belonged to the Company. At no time during the fundraising process did Froncillo assert that he or Protobee had any interest in Subeca's intellectual property.

30.    Subeca completed a Series A fundraising round effective March 29, 2024. The

Preferred Stock Purchase Agreement included extensive disclosures regarding Subeca's intellectual

property rights. Those disclosures included the following:

2.8  Intellectual Property.

(a)  The Company owns or otherwise has valid and enforceable rights, licenses or
permissions to, all Company Intellectual Property sufficient to carry out its business
as now conducted without, to the Knowledge of the Company, any conflict with,
or infringement of, the rights of others. The Company is the sole and exclusive
owner of all Company Owned Intellectual Property, free and clear of all
encumbrances, and all material Company Owned Intellectual Property is valid and
enforceable. All filings and fees relating to Company Intellectual Property
Registrations have been timely filed and paid to the relevant governmental
authorities and all Company Intellectual Property Registrations are otherwise in
good standing.

\*\*\*

(c) Except as set forth on Subsection 2.8(c) of the Disclosure Schedule and except for
"off-the-shelf" software or other readily available commercial software (or
software made available as a service) available to the Company pursuant to
standardized terms from third parties with a replacement cost and/or aggregate
annual license and maintenance fee payable by the Company of less than $25,000,
the Company has not entered into any Company Intellectual Property Agreement.
The Company is in compliance with and has not received written notice that it has
breached, violated or defaulted under any of the terms or conditions of any
Company Intellectual Property Agreement, nor, to the Company's Knowledge, has
there been any event or occurrence that would reasonably be expected to constitute
a breach, violation or default of any such Company Intellectual Property Agreement
(with or without the lapse of time, giving of notice or both) by the Company. To
the Company's Knowledge, each Company Intellectual Property Agreement is in
full force and effect, and to the Company's Knowledge no counterparty to any
Company Intellectual Property Agreement is in breach, violation or default thereof.

(d) The Company has not received from or sent to any Person any communications or
notices with respect to infringement, misappropriation or violation of any
Intellectual Property. There is no action or proceedings pending or threatened
alleging any infringement, misappropriation or violation by the Company of the
Intellectual Property of any Person; (i) challenging the validity, enforceability,
registrability, patentability, or ownership of any Company Owned Intellectual
Property or the Company's right, title, or interest in or to any Company Owned
Intellectual Property, or (ii) by the Company, alleging any infringement,

misappropriation or violation by any Person of any Company Owned Intellectual Property.

*See* Ex. C, Excerpts from the Preferred Stock Purchase Agreement.

31.     Froncillo was listed on Exhibit B of the Preferred Stock Purchase Agreement as a Key Holder and identified as owning 3,030 shares of common stock.

32.     As a shareholder who received the Preferred Stock Agreement and attended the Series A investor meetings, Froncillo was aware of the intellectual property disclosure. However, at no point during the fundraising, including upon the execution of the Preferred Stock Agreement, did Froncillo claim that he or Protobee had any interest in Subeca's intellectual property.

33.     In June of 2025, Froncillo again confirmed in writing that Subeca owned and controlled all of the Company's intellectual property when he acknowledged receipt and review of the Company handbook.

34.     Section 9.2 of the company handbook provides:

**9.2 Inventions**

Any invention created, in whole or in part, during your work hours, or from the use of equipment or facilities belonging to Subeca Inc, is a "work for hire" and is the property of the Company.

If you intend to develop and maintain property rights to any invention that relates in any way to products or services of the Company, you are required to obtain a written waiver of this policy, signed by both you and the Chief Executive Officer.

*See* Ex. D, Excerpts from the 2025 Handbook.

### *The 2024 Stock Option Plan and Froncillo's Initial Assertions Interfering with Subeca's Intellectual Property Rights*

35.     After the completion of the Series A fundraising round in March 2024, Subeca implemented a stock option program pursuant to the terms of a 2024 Stock Option Plan. The Company granted Froncillo the option to purchase an additional 14,000 shares of Subeca's common stock under that plan. Froncillo executed a stock option agreement on September 9, 2024. The

agreement included a provision that the options would be forfeited in the event Froncillo's

employment was terminated for cause and identified the grounds of a "for cause" termination at

Section 1.1(c) as follows:

> *"Cause"* means "Cause" as defined in Optionee's employment or service
> agreement with the Company or an Affiliate of the Company, or in the absence of
> such an agreement or such a definition, "Cause" will mean a determination by the
> Committee that Optionee (i) has engaged in fraud, personal dishonesty, willful
> violation of any law, rule, or regulation (other than minor traffic violations or
> similar offenses), or a breach of fiduciary duty involving personal profit, (ii) is
> unable to satisfactorily perform or has failed to satisfactorily perform Optionee's
> duties and responsibilities for the Company or any Affiliate of the Company, (iii)
> has been convicted of, or plead nolo contendere to, any felony or a crime involving
> moral turpitude, (iv) has engaged in negligence or willful misconduct in the
> performance of Optionee's duties, including but not limited to willfully refusing
> without proper legal reason to perform Optionee's duties and responsibilities or
> instructions from the Board or Optionee's supervisor, as applicable, (v) has
> materially breached any corporate policy or code of conduct established by the
> Company or any Affiliate of the Company as such policies or codes may be adopted
> from time to time, (vi) has violated the terms of any confidentiality, nondisclosure,
> intellectual property, nonsolicitation, noncompetition, proprietary information and
> inventions, or any other agreement between Optionee and the Company or an
> Affiliate of the Company related to Optionee's Service, or (vii) has engaged in
> conduct that is likely to have a deleterious effect on the Company or any Affiliate
> of the Company or their legitimate business interests, including but not limited to
> their goodwill and public image.

*See* Ex. E, 2024 Stock Option Plan, Section 1.1(c) (emphasis added).

36.    Froncillo's stock option agreement further provided that a termination for cause

would result in a forfeiture of the options, including any options that had vested.

37.    From June 2023 to December 2024, Patrick Keaney served as chief executive officer

for Subeca. Keaney understood that Froncillo had initially been retained as a contractor and then

converted to a full-employee, as set forth above. Although Froncillo had disclosed to Keaney the

existence of Protobee as a side business, Froncillo represented the business to be dormant given his

full-time role at Subeca.

9

38.     On July 29, 2024 – well after the Series A financing identified above and seven years after Protobee first contracted with Seco to assist with the prototype, Froncillo – *for the first time* – implied to Keaney that he and/or Protobee would potentially claim an ownership interest in certain of Subeca's intellectual property. In particular, Froncillo threatened that, if his employment with Subeca was terminated, he would take certain protocols with him and restart Protobee.

39.     Keaney was taken aback by Froncillo's threat because it was inconsistent with Subeca's history, with Froncillo's role as a consultant and then employee, with Froncillo's consistent acknowledgements of Subeca's exclusive rights to the Company's intellectual property, and with representations Subeca had made – with Froncillo's knowledge and participation – regarding the ownership of Subeca's technology. Keaney reminded Froncillo that the Company owned all firmware, hardware and software related to the protocols identified by Froncillo. Although Froncillo acknowledged that fact, he claimed he did not care.

40.     Froncillo's threat to assert alleged ownership rights only in the event of his termination—and despite admitting that the claim lacked validity—demonstrates clear bad faith. Rather than raising any concerns during the development or fundraising phases, when transparency was expected, Froncillo chose instead to weaponize the claim as leverage in anticipation of a potential future termination, while conceding the claims were baseless.

41.     The next day, July 20, 2024, Keaney and Froncillo spoke again. Keaney reiterated Subeca's position regarding its intellectual property. Froncillo did not dispute Keaney's overview of the facts and did not claim a legal right or ownership interest in the Company's intellectual property.

42.     Given their conversation, Keaney considered the matter closed and, given Froncillo's apparent concern about his continued tenure at the Company, recommended that

Subeca's Board of Directors approve a 50% acceleration of Froncillo's stock options. The Board

approved the acceleration on August 20, 2024.

*Leadership Changes at Subeca, the Termination of Froncillo's Employment,*
*and Froncillo's Wrongful Conduct*

43.    On December 3, 2024, Subeca appointed Anne Mushow as its chief executive

officer and Keaney assumed new duties as the Company's Chief Revenue Officer.

44.    Not long after the leadership changes, the Company decided to terminate Froncillo's

employment.

45.    Seeking an amicable separation, on February 24, 2025, Subeca provided Froncillo

with a draft a severance agreement. Among other things, the agreement would have confirmed

Froncillo's equity rights under the 2024 Stock Incentive Plan, while requiring Froncillo to confirm

that he would continue to "abide by any and all obligations set forth in the Member Interest Option

Agreement," expressly including those obligations regarding Subeca's intellectual property.

46.    On March 2, 2025, Froncillo sent an email refusing to sign the separation agreement

based on alleged concerns about intellectual property rights of Protobee stating:

> I won't be able to sign this agreement as written, as it fails to address the intellectual
> property rights of Protobee LLC (my affiliate entity that originally developed the
> genesis of the IoT technology that is used in the Company's current product line).
> Further, this technology incorporated, and was built on, separate and pre-existing
> intellectual property systems of Protobee LLC that pre-date my personal
> employment with Seco/Subeca, and that have long been, and are still currently, in
> use by Protobee LLC and/or its clients. In the spirit of reaching a complete
> resolution on this matter, any full and final release would need to account for an
> assignment or exclusive license of rights by Protobee LLC to the Company and the
> corresponding consideration.

47.    On March 7, 2025, Subeca responded and requested information from Froncillo

detailing what specific intellectual property rights of Protobee were allegedly at issue, including

any patents, copyrights, or trade secrets. Subeca also requested information on which clients of

Protobee were allegedly using technology that was allegedly incorporated in Subeca's products ("Accused Product(s)").

48.     On March 12, 2025, Froncillo responded that the alleged Protobee intellectual property rights included trade secrets and copyright material and that he wanted to ensure "we" had clarity on the issues surrounding the alleged intellectual property rights:

> I'm happy to further explain the nature of Protobee's IP, which, in this case, includes various trade secrets and copyrighted material. Protobee has developed an extensive IP portfolio, which is vital to remain efficient and cost-competitive. This IP includes schematic/ PCB layout modules as well as software and firmware algorithms for microcontroller peripherals, sensors, RF controllers, etc. Significant R&D has gone into the wireless communications technology, battery systems, sleep algorithms, bootloaders, etc. Protobee retains the rights to the IP that Protobee develops and generally assigns product-specific, non-exclusive, non-transferable licenses to its customers to use the specific system designs in their end products. To clarify, these end system designs are unique to each customer and are not shared between others.

> It should also be noted that some of the devices that were originally designed by Protobee remain used by Subeca in the field today, albeit with some level of updates since Protobee's involvement, and this technological backbone was the genesis for all future products of Seco Sys, and eventually Subeca.

> As you know, I poured a lot into this company, both personally and professionally, and still maintain shares, so I want nothing but the best for Subeca. I just want to ensure that we get some clarity on this issue surrounding the IP. I am open to discussing a permanent assignment of the IP and welcome further discussion surrounding the issue

49.     On March 21, 2025, Subeca responded and reiterated its request for details to enable Subeca to understand and investigate the alleged intellectual property rights issues.

50.     On March 23, 2025, Froncillo indicated he would obtain legal counsel. Subeca responded the next day and reiterated its request for details to enable Subeca to understand and investigate the alleged intellectual property rights issues.

51.     On April 11, 2025, Froncillo's counsel Baker Botts LLP wrote to Subeca asserting that Protobee retained ownership of certain intellectual property used in Subeca's products and

further claiming that Subeca did not have any ownership interest in, or an exclusive, transferable license to retain and use, that property. The letter further alleged that, prior to Protobee commencing any work for Subeca, Protobee had already developed an extensive intellectual property ("IP") portfolio, including trade secrets and copyrighted technology related to microcontroller peripheral firmware, wireless protocol methods, and sleep current algorithms.

52.     Froncillo's counsel also alleged that the system that Protobee designed and developed for Subeca, and which Subeca has continued to use in its products, was built on and incorporated various of Protobee's pre-existing trade secrets and copyrighted material.

53.     Froncillo's counsel further claimed that, as an independent contractor for Subeca, Protobee designed and developed additional hardware and software Protobee asserted to be protectable and copyrightable.

54.     Froncillo's counsel asserted that Subeca does not own the intellectual property rights at issue and cannot convey its right to use Protobee's IP to any such entity without a license from Protobee expressly granting Subeca the right to do so.

55.     On April 29, 2025, Subeca emailed Froncillo requesting that Froncillo provide written responses to the following four questions concerning the intellectual property issues:

> What specific technologies/features do you believe are incorporated in Subeca's products that you/Protobee developed before ever working with Seco/Subeca?
>
> What specific technologies/features do you believe are incorporated in Subeca's products that you/Protobee developed for Seco/Subeca before you became an employee?
>
> Do you/Protobee want to continue to use any of these technologies/features with other clients?
>
> Do you believe that Subeca needs a license or assignment from you/Protobee to continue to use any of these technologies/features?

13

56.     On April 30, 2025, Froncillo responded, listing alleged intellectual property that was not patented, not copyrightable, and not a trade secret, including, for example, gasket design and material choices. In his response, Froncillo indicated that "[i]would help me if you would provide me with all of the software modules and documentation that were developed or provided by Protobee which would allow me to identify other IP items that were missed in the below lists."

57.     On May 5, 2025, Froncillo met with technical team members at Subeca so that Subeca could better understand the alleged intellectual property issues. During the call, Froncillo did not provide any more specific information but reiterated his belief that that Subeca's products were using Protobee's copyrights and trade secrets and this dispute was headed to court and that he would fight these intellectual property issues.

58.     On May 23, 2025, Froncillo's counsel stated in a letter to Subeca's counsel that they intend to take all appropriate legal actions if Subeca would not allow Froncillo to exercise the stock options identified above.

59.     Subeca has declined to approve Froncillo's exercise of the stock options given, among other things, its discovery of his fiduciary duty breaches as identified above and his interference with the Company's ownership rights in its intellectual property.

## CAUSES OF ACTION

## COUNT I

### (Declaratory Judgment against both Defendants)

60.     Subeca restates and incorporates by reference the facts and averments set forth in the above paragraphs as if full set forth herein

61.     Defendants have asserted a claim to federal copyright ownership and trade secret ownership of materials they developed (the "Disputed Materials") which Defendants allege are used within the Accused Products.

62.     Defendants have refused to identify the Disputed Materials with sufficient specificity, other than describing them generally as copyrighted and trade secret materials within the Accused Products.

63.     Defendants have asserted that Plaintiff's continued use of the Accused Products, which are a core part of Plaintiff's business, represents an infringement of Defendants' copyrights and trade secrets.

64.     Based on Defendants' recent communications with Plaintiff, Plaintiff has reasonably assumed and anticipated that Defendants will seek litigation in pursuit of their respective alleged copyright and trade secret ownership and infringement claims. An actual controversy exists over: (1) the ownership of the Disputed Materials including under the Copyright Act; (2) whether Defendants granted Plaintiff an irrevocable, nonexclusive, and worldwide implied license under the Copyright Act through its course of conduct and dealing; and (3) whether the Accused Products include any copyrighted materials owned by Defendants; and (4) whether Plaintiff has infringed any copyright owned by Defendants by their conduct with respect to the Accused Products (17 U.S.C. § 101 et al.) or any trade secrets.

65.     It would serve a useful purpose for this Court to clarify the legal relations at issue and to clarify the disputes regarding the ownership of the Disputed Materials and the scope of any implied license, as such clarification will resolve the central copyright and trade secret issues in this action.

66.     Plaintiff's pursuit for a declaratory remedy is not being used merely for the purpose of procedural fencing or to provide an arena for a race to *res judicata*. Rather, an actual controversy currently exists and Defendants' tortious conduct has and continues to harm Plaintiff.

67.     This declaratory action would not increase friction between federal and state courts as this action is partially governed by the Copyright Act and this Court has supplemental jurisdiction over the related state law claims asserted herein.

68.     There is not an alternative remedy which is better or more effective because declaratory relief over the copyright ownership and licensing issues form the central claims in this case and no other relief can be sought to declare the rightful ownership of the Disputed Materials and/or the scope of Plaintiff's implied license.

69.     Accordingly, Plaintiff seeks Declaratory Judgment, pursuant to the federal declaratory statute, 28 U.S.C. § 2201 et seq. and Fed. R. Civ. P. 57, and respectfully requests that this Court declare as follows:

70.     That the Disputed Materials are the sole and exclusive property of Plaintiff; that all copyrightable portions of such materials are "works made for hire" as that term is defined in the Copyright Act 17 U.S.C. § 101; and that all right, title and interest in the Disputed Materials has been assigned, transferred, conveyed, and delivered to Plaintiff;

71.     That Defendants, by receiving good and valuable consideration from Plaintiff for the Disputed Materials, and through the Parties' course of conduct over their more than 8-year business relationship, have granted Plaintiff under the Copyright Act, 17 U.S.C. 204 et al., a non-exclusive, irrevocable, worldwide implied license to use, in its sole discretion, the Disputed Materials;

72.     That Defendants do not control sole and exclusive copyright ownership over the Disputed Materials under the Copyright Act;

73.     That Plaintiff has not exceeded the scope of any non-exclusive, irrevocable, and worldwide implied license as set forth above, under 17 U.S.C. § 501 et al. through its past and current use of Disputed Materials and/or the Accused Products; and through Defendants' knowledge of the intended and actual uses of the Disputed Materials and/or Accused Products and failure to assert or enforce any claimed infringement of the scope of the implied license;

74.     That Plaintiff, through its use of the Disputed Materials pursuant to any implied license as set forth above, has not infringed any of Defendants' alleged copyright ownership or intellectual property rights under the Copyright Act, 17 U.S.C. § 501 et al.;

75.     That Plaintiff, pursuant to any implied license as set forth above, has the right to possess and use, in its sole discretion, the Disputed Materials pursuant to 17 U.S.C. 204 et al.; and/or

76.     That Plaintiff sole and exclusive intellectual property rights in the Disputed Materials created by Froncillo after January 1, 2019.

## COUNT II

### (Declaratory Relief Against Froncillo Regarding The Stock Options)

77.     Subeca restates and incorporates by reference the facts and averments set forth in the above paragraphs as if full set forth herein.

78.     For the reasons stated herein, a case or controversy exists relating to whether, had Subeca known prior to the termination of Froncillo's employment of his conduct with respect to the Disputed Materials and undisclosed intent to re-assert his alleged ownership rights in the Disputed Materials the termination of his employment, the Company would have had grounds to terminate

his employment for cause under Section 1.1(c) (i) - (ii) and (iv) - (vii) of the 2024 Stock Option

Plan.

79.    Because Subeca would have terminated Froncillo for cause based on the

allegations set forth above, and has to right to categorize his termination as a for cause termination

based on the evidence discovered since his termination, Froncillo has forfeited any rights he may

have had with respect to the stock options vested under the 2024 Stock Option Plan.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court:

(a)    Enter judgment for Plaintiff on its Complaint;

(b)    Enter declaratory judgment for Plaintiff on Count I;

(c)    Enter declaratory judgment for Plaintiff on Count II; and

(d)    Grant Plaintiff further relief as the Court deems just and proper.

Respectfully Submitted,

Defendant,
PLAINTIFF SUBECA, INC.

By its attorneys,

*/s/ Brian E. Whiteley*
Brian E. Whiteley
Barclay Damon LLP
160 Federal Street, Suite 1001
Boston, MA 02110
bwhiteley@barclaydamon.com
(617) 274 –2900

18